IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**RANDY A. HERSH** *also known as* RANDY HERSH AND **MELINDA A. HERSH** *his wife also known as* MELINDA HERSH**,**

    **Plaintiffs,**

    v.

**CITIMORTGAGE, INC., CITIGROUP, INC.** *and* **CITIBANK, N.A.,**

    **Defendants.**

2:13-cv-1344

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION TO DISMISS COMPLAINT (ECF No. 12) filed by Defendants, CitiMortgage, Inc. ("CitiMortgage"), Citigroup, Inc. ("Citigroup"), and Citibank, N.A. ("Citibank"), with brief in support (ECF No. 13). Randy and Melissa Hersh ("Plaintiffs") have filed a brief in opposition (ECF No. 14). Accordingly, the matter has been thoroughly briefed and is ripe for disposition.

### I. Background

This case arises out of a mortgage held by CitiMortgage on property owned by Plaintiffs. For the purpose of this motion, all of the factual allegations in the Amended Complaint have been accepted as true.

Plaintiffs executed a mortgage with ABN AMRO Mortgage Group, Inc. ("ABN AMRO") on or about March 22, 2002. As part of this transaction, Plaintiffs refinanced an existing loan, part of the proceeds of which were allegedly to be used to satisfy a tax lien on Plaintiffs' property held by the Fayette County Tax Bureau. The Amended Complaint alleges that after this transaction ABN AMRO represented to Plaintiffs that all outstanding liens and obligations on the

1

property were, in fact, satisfied by way of the refinancing.

Early the next year, an ABN AMRO representative contacted Plaintiffs and informed them that approximately $7,000.00 was owed on the loan because the outstanding tax lien had not actually been satisfied through the refinancing.[1] The ABN AMBRO representative also indicated that there was a judgment on the property in the amount of $4,000.00 that also had to be satisfied. Plaintiffs claim that Mrs. Hersh responded by informing the representative that the tax lien was supposed to have been satisfied through the refinancing. She also allegedly explained that the judgment had been discharged in a prior Chapter 7 bankruptcy proceeding. Plaintiffs aver that the ABN AMRO representative stated "in bad faith" that Plaintiffs were still in default. Shortly thereafter, ABN AMRO filed a foreclosure action against Plaintiffs in the Fayette County Court of Common Pleas. According to Plaintiffs, ABN AMRO "fraudulently alleged the Plaintiffs were in default" when it filed the action.

After the foreclosure action was initiated, Plaintiffs filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania. While Plaintiffs were

---

1. This action appears to have been taken in accordance with section 4 of the mortgage, which is attached to the Amended Complaint as Exhibit A and provides that:

> Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above . . . .

Am. Compl. Ex. A. (ECF No. 9).

in bankruptcy, Citigroup merged with ABN AMRO. On November 5, 2007, CitiMortgage entered its appearance in the bankruptcy proceeding, claiming that it had been assigned Plaintiffs' mortgage. Thereafter, the Chapter 13 trustee began making the monthly mortgage payments to CitiMortgage.

On October 31, 2008, CitiMortgage filed a motion in Bankruptcy Court to remove the automatic stay that had been in place since Plaintiffs entered bankruptcy, seeking to be permitted to initiate a foreclosure action against Plaintiffs. On December 9, 2008, Bankruptcy Judge Jeffrey Deller denied CitiMortgage's motion. That same day, Judge Deller issued an order that discharged Plaintiffs from the Chapter 13 proceeding, indicating that they had successfully completed all of the payments under their plan.

Plaintiffs allege that, after their discharge from bankruptcy, they continued to make their monthly mortgage payments to CitiMortgage. On February 18, 2009, however, CitiMortgage sent Plaintiffs a statement "fraudulently alleging" that they were in default in the amount of $7,261.75. When Mrs. Hersh received the statement, she contacted CitiMortgage and inquired into the nature of the alleged default. A CitiMortgage representative informed her that the Fayette County tax lien and the outstanding judgment had to be satisfied forthwith. In response, Mrs. Hersh again allegedly tried to explain that the tax lien had been fully satisfied in the Chapter 13 proceeding and the judgment had been satisfied in the prior Chapter 7 proceeding. Plaintiffs allege that the CitiMortgage representative refused to consider Mrs. Hersh's explanation and continued to "fraudulently allege" that they were in default.

Plaintiffs apparently never satisfied the lien or judgment but nevertheless continued to make their monthly mortgage payments. CitiMortgage refused to accept such payments, instead returning them to Plaintiffs and claiming that Plaintiffs remained in default because of the

unsatisfied lien and judgment.

On May 20, 2009, CitiMortgage brought a foreclosure action in the Court of Common Pleas of Fayette County, alleging that Plaintiffs had been in default since September 1, 2008. CitiMortgage eventually took a default judgment and sold the property at a sheriff's sale in March 2010. The mortgage was then assigned to the Federal Home Loan Mortgage Association ("FHLMA"), which filed an ejectment action on June 1, 2010. A default judgment was thereafter entered in the FHLMA's favor, and on August 24, 2010, Plaintiffs aver that the Fayette County Sheriff forcibly ejected them from their property, in the process causing significant damage, loss and destruction to their personal property.

Plaintiffs initiated this action in the Court of Common Pleas of Fayette County by filing a *praecipe* for writ of summons on May 9, 2013. Their Complaint followed on August 16, 2013. On September 13, 2013, Defendants timely removed the action to this Court based on diversity jurisdiction.

On September 20, 2013, Defendants filed a motion to dismiss. (ECF No. 7). Rather than responding to Defendants' motion, Plaintiffs filed an Amended Complaint on October 11, 2013. In Count I, they allege that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Am. Comp. ¶ 39. According to Plaintiffs, Defendants breached the mortgage's implied covenant of good faith and fair dealing by "adding charges they knew they had no right to add, in violation of the discharge order, to the monthly mortgage bills;" "failing to accept and apply Plaintiffs' correct payments to the mortgage, which led to the eventual foreclosure on the Plaintiffs' property;" "initiating a foreclosure action in the Court of Common Pleas of Fayette County on May 20, 2009;" and "taking a default judgment against the Plaintiffs and selling the property through the Fayette County Sheriff's Office." *Id.*

¶¶ 41, 43, 44, 45 (ECF No. 9). In Count II, Plaintiffs allege that Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201 *et seq.*, by engaging in deceptive conduct relative to the foreclosure. Am. Compl. ¶¶ 48-56. Defendants responded by filing a second motion to dismiss.[2]

## II.     Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007), the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

A district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. First, the Court must separate the factual and legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although the

---

2.     Defendants have separately moved to dismiss the claims against CitiMortgage's parent company, Citigroup, and sister company, Citibank. They argue that these entities were never served and that Plaintiffs have failed to sufficiently allege an agency relationship among all three entities so as to impute liability for CitiMortgage's conduct to Citigroup and Citibank. The Court has considered this argument and agrees that the Amended Complaint has insufficiently pled allegations against Citigroup and Citibank. *See Shankin v. Harborview Mortg. Loan Pass Through Certificate Series 2007-5*, No. 12-cv-3737, 2013 WL 3957147, at *4 (E.D. Pa. July 31, 2013) (explaining that to survive a motion to dismiss, plaintiff must allege sufficient facts to show that 'at least an implied intention to create the relationship of principal and agent existed"). In any event, the Court need not address the specific allegations against these two entities at any length because, for reasons explained below, the claims against all of the Defendants will be dismissed. Hereinafter, the Court's discussion will relate only to CitiMortgage.

Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (citing *Iqbal,* 129 S. Ct. at 1949). The determination of "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal,* 129 S. Ct. at 1950).

### III. Discussion

#### A. *Res Judicata*

As an initial matter, the Court does not agree with CitiMortgage's contention that Plaintiffs' claims are barred by *res judicata*. The threshold question for determining whether the doctrine applies in this case is whether Plaintiffs could have brought their claims as counterclaims in the foreclosure action. *See Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 463 (Pa. Super. Ct. 1984) (citing *Restatement (Second) of Judgments* § 22 (1980)). The Pennsylvania rules of Civil Procedure provide that a party in a foreclosure action "may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa. R.C.P. 1148. Pennsylvania courts have interpreted this rule narrowly, so as to permit "only those counterclaims that are part of or incident to the creation of the mortgage itself." *Chrysler First Bus. Credit Corp. v. Gourniak*, 601 A.2d 338, 341 (Pa. Super. Ct. 1992) (collecting cases). Moreover, because a foreclosure action is an *in rem* proceeding, neither the borrower nor the lender may bring an *in personam* claim "to enforce personal liability." *Newtown Vill. P'ship v. Kimmel*, 621 A.2d 1036,

1037 (Pa. Super. Ct. 1993).

Consistent therewith, courts have found that claims such as those raised here may not be brought as counterclaims in foreclosure actions. *See, e.g.*, *Mellon Bank, N.A. v. Joseph*, 406 A.2d 1055, 1060 (Pa. Super. 1979) (dismissing counterclaim involving bank's failure to accept mortgage payments from defaulting borrower because they were "remedial; they arose once the mortgage was in default, but were not part of, or incident to, the creation of the mortgage itself"); *Beneficial Consumer Disc. Co. v. Hoffman*, 2006 WL 4091457, at *503-04 (Pa. Com. Pl. Fulton Cnty. March 29, 2006) (dismissing counterclaims for, *inter alia*, breach of contract and violation of the UTPCPL because the claims "arose or occurred a significant period after the creation of the mortgage and are unrelated to the actual creation of the security interest"); *In re Reagoso*, No. 06-12961, 2007 WL 1655376, at *4 (Bankr. E.D. Pa. June 6, 2007) (citations omitted) (explaining that plaintiff's UTPCPL claim was not barred by *res judicata* because plaintiff had no opportunity to raise it in foreclosure action). The Court concludes, therefore, that Plaintiffs' claims are not barred by *res judicata*.

**B.     Count I – Breach of Contract**

CitiMortgage raises two arguments in favor of dismissal of Plaintiffs' breach of contract claim, one based on the statute of limitations and the other based on the claim's merits. With respect to the first argument, dismissing a case at the motion to dismiss stage based on a limitations defense is disfavored unless it is clear from the face of the complaint that the action is time-barred. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Although the Court recognizes that some of the alleged conduct occurred beyond the four-year limitations period for breach of contract actions, other alleged conduct occurred within the limitations period. Thus, it is not entirely clear when Plaintiffs' cause of action accrued. That being the case, it would

7

inappropriate to dismiss the entire claim based solely on the statute of limitations.

Turning to the merits, because Plaintiffs have not identified a specific contractual provision which was allegedly breached, their claim is ostensibly predicated on a breach of the implied covenant of good faith and fair dealing. The Pennsylvania Supreme Court has noted that there is considerable confusion about whether such an implied covenant arises in every contract under Pennsylvania law. *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 884 n.2 (Pa. 2007) (citations omitted). In the past, this Court has echoed those sentiments, opining that "this area of Pennsylvania jurisprudence, like that of many other states, is in 'turmoil' . . . [A] series of 'misunderstandings and missteps' has led to an imprecise and 'internally inconsistent' body of case law." *GNC Franchising, Inc. v. O'Brien*, 443 F. Supp. 2d 737, 751 (W.D. Pa. 2006) (Lancaster, J.) (quoting Seth William Goren, *Looking for Law in All the Wrong Places: Problems in Applying the Implied Covenant of Good Faith Performance*, 37 Univ. San Fran. L. Rev. 257 (2003)).

Having done its best to wade through this thicket, the Court agrees with those courts that have held that an implied covenant of good faith and fair dealing is incorporated into every Pennsylvania contract. *See, e.g.*, *Haywood v. Univ. of Pittsburgh*, --- F. Supp. 2d ---, 2013 WL 5466958, at *15 (W.D. Pa. Sept. 30, 2013) (reviewing case law from Pennsylvania and federal district courts); *McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Bus. Trust*, No. 08–961, 2009 WL 1292808, at *2-3 (W.D. Pa. May 7, 2009) (surveying developments in Pennsylvania law and concluding that the "prevailing rule" is that the implied covenant arises in every contract). It follows that a claim for breach of the implied covenant is cognizable under Pennsylvania law – not as a separate, tort-based cause of action but as a variation of an ordinary breach of contract claim. In other words, a plaintiff cannot bring claims for both breach of an

express contractual provision along with a separate claim for breach of the implied covenant of good faith, as the implied covenant claim is "subsumed" within the breach of contract claim. *Vassalotti v. Wells Fargo Bank, N.A.*, 815 F. Supp. 2d 856, 862 n.12 (E.D. Pa. 2011) (citation and quotation marks omitted). But in certain cases a plaintiff is permitted to bring a breach of contract claim predicated solely on breach of the implied covenant of good faith.[3] *See Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*, 779 F. Supp. 2d 416, 426 n.8 (E.D. Pa. 2011) (explaining that "a plaintiff pursuing an implied duty theory must bring a breach of contract action, not an independent cause of action for breach of the covenant of good faith and fair dealing"). Therefore, "in order to survive [CitiMortgage's] motion to dismiss the breach of contract claim founded upon a breach of the implied covenant of good faith and fair dealing, Plaintiff[s] need only allege facts sufficient to support a claim that the implied covenant was breached, as opposed any other specific contractual duty." *Gallo v. PHH Mort. Corp.*, 916 F. Supp. 2d 537, 551 (D.N.J. 2012) (applying Pennsylvania law).

In this case, Plaintiffs have failed to surpass that threshold. As the Court understands it, the crux of Plaintiffs contention is that CitiMortgage "fraudulently alleg[ed]" they were in default, when in fact the tax lien on which the default was based had been satisfied as part of the

---

3. The two cases relied upon by CitiMortgage in its reply brief do not persuade the Court otherwise. *See* Def.'s Reply Br. 4-5 (ECF No. 15) (citing *Vassalotti*, 815 F. Supp. 2d 856; *Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151 (Pa. Super. Ct. 1989)). In fact, *Creeger* – particularly its suggestion that the covenant arises only in limited circumstances – has been the source of much of the confusion about the implied covenant's application in Pennsylvania. *See McHolme/Waynesburg*, 2009 WL 1292808, at *3 n.2 (citation omitted). Instead of supporting CitiMortgage's narrow view of the implied covenant, *Creeger* is better understood as simply recognizing, as many other decisions have, that breach of the covenant is not a separate cause of action arising in tort but merely a breach of contract claim. *Creeger*, 560 A.2d at 154 ("There is no need in such cases to create a separate tort for breach of a duty of good faith."). *Vassalotti* must be read in a similar manner, as the court in that case recognized that a breach of the implied covenant may not be raised in addition to a separate breach of contract claim but may form the basis of an ordinary breach of contract claim. 815 F. Supp. 2d at 862 n.12.

Chapter 13 plan. However, simply alleging that CitiMortgage acted in "bad faith," "fraudulently," or in breach of the duty of good faith by going through with the foreclosure is not sufficient. Plaintiffs were required to plead facts which made such a claim plausible. As the Amended Complaint reads, however, it appears that CitiMortgage's actions were taken in accordance with the agreement – i.e., they had a right to insist on payment of the charges, a right to refuse payment, a right to foreclose on the mortgage, and a right to sell the property at sheriff's sale. Baldly claiming those actions were taken in "bad faith" and "fraudulently" since the lien had been satisfied is not sufficient.

Notably, nowhere in the Amended Complaint do Plaintiffs allege that the Fayette County Tax Claim Bureau had filed a claim for $7,261.75 in the Bankruptcy proceeding. In fact, the claims register from that proceeding, which CitiMortgage attached to its reply brief,[4] indicates that although the Tax Claim Bureau did file a claim, it was only in the amount of $1,154.07. *See* Def.'s Rep. Br. Ex. A (ECF No. 15). As the discharge order attached to the Amended Complaint explained to Plaintiffs, to the extent that the lien was not avoided or eliminated in the bankruptcy case or the full amount of the taxes paid, the tax debt remained and the lien was still attached to the property. *See* Am. Compl. Ex. C at 2 (ECF No. 9). In such case, CitiMortgage had a right under the mortgage to demand that the lien be satisfied, as the discharge order made clear.[5] *Id.*. Plaintiffs' failure to square these discrepancies with fact-based allegations renders their claim implausible. Accordingly, Plaintiffs' breach of contract claim will be **DISMISSED**.

---

4. The Court is permitted to take judicial notice of matters outside the pleadings, including documents from prior judicial proceedings and other public filings such as the claims register from the Bankruptcy case. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

5 The discharge order's reference to tax debts and liens is consistent with the rule that tax liens survive bankruptcy unaffected, unless they are expressly dealt with in the Chapter 13 plan. *See In re Ruxton*, 240 B.R. 211, 214 (Bankr. E.D. Pa. 1999).

C.     **Count II – UTPCPL**

CitiMortgage next moves to dismiss Plaintiffs' UTPCPL claim, arguing that it is facially deficient because Plaintiffs have failed to allege the elements of common law fraud.[6] Plaintiffs argue that they need not plead the elements of common law fraud because they are proceeding under the UTPCPL's catchall provision, which prohibits fraudulent *or* deceptive conduct.

The UTPCPL is designed to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. 73 P.S. § 201–03. Under the UTPCPL, "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" by the act may bring a cause of action for damages. *Id.* § 201-9.2.

The UTPCPL defines actionable "unfair methods of competition" or "unfair or deceptive acts or practices" by listing twenty practices that violate the act. *Id.* § 201-2(4). It also contains a "catchall provision." *Id.* § 201-2(4)(xxi). Prior to 1996, the "catchall provision prohibited 'fraudulent conduct' that created a likelihood of confusion or misunderstanding." *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012) (citing prior version of the UTPCPL). The Pennsylvania General Assembly has since amended the provision to prohibit "deceptive conduct," as well. *Id.* Thus, as it currently reads, this section is

---

6.     CitiMortgage argues that Plaintiffs' claim fails because it does not arise from the purchase or lease of goods or services, but this argument is baseless. Our appellate court has made clear that "the practice of mortgages and mortgage financing has not escaped application of the [UTPCPL]" because "the business of mortgage lenders is the sale of a service within the scope of the [statute]." *In re Smith*, 866 F.2d 576, 583 (3d Cir. 1989) (citation omitted). Likewise, it is immaterial that the events alleged in the Amended Complaint occurred after the loan was originated. *See Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 543 (W.D. Pa. 2012) (explaining that "a district court should not limit the UTPCPL's application to only those circumstances where the unfair or deceptive conduct induced the consumer to make the initial purchase").

expansive: a defendant need only engage in "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" for liability to attach. *Id.* § 201–2(4)(xxi).

In light of these "[r]ecent developments in Pennsylvania law," the Court disagrees with CitiMortgage's argument "that meeting a heightened 'fraud pleading' standard is" required to state a claim under the UTPCPL. *Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 542 (W.D. Pa. 2012). In fact, in *Bennett*, the Pennsylvania Superior Court expressly distinguished the cases on which Defendants rely, in which the courts applied the pre-1996 version of the provision, and explained that the inclusion of the word "deceptive" in section 201–2(4)(xxi) "lessened the degree of proof" needed to maintain an action under the catchall provision. 40 A.3d at 153–55. Instead of requiring proof of fraudulent conduct (e.g., a material misrepresentation), the Superior Court held that "deceptive conduct which creates a likelihood of confusion or misunderstanding can constitute a cognizable claim under Section 201–2(4)(xxi)." *Id.* at 154–55.

Nevertheless, none of the changes in the law discussed in *Bennett* removed the requirement that a plaintiff prove the other elements of a UTPCPL claim in order to survive a motion to dismiss. *See Leary v. State Farm Fire & Cas. Co.*, No. 3:11–145, 2012 WL 604338, at *7 (W.D. Pa. Feb. 24, 2012); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009). Thus, while Plaintiffs need not show that CitiMortgage made any sort of affirmative misrepresentation, they still must establish that they "justifiably relied on the information (or misinformation) presented by [CitiMortgage]" – i.e. that they engaged in some detrimental activity based on the defendant's conduct. Moreover, they must show that they "suffered damages as a proximate result of such reliance." *Leary*, 2012 WL 604338, at *7. These two requirements are derived not from the catchall provision, but instead from the causation

requirement in the UTPCPL's citizen suit provision found in § 201-9.2, which applies to "*all* substantive subsections of the Consumer Protection Law, fraud-based or not." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) (emphasis added).

Applying those principles here, the Court finds that the Amended Complaint fails to sufficiently allege a violation of the UTPCPL's catchall provision. With regard to the element of deception, Plaintiffs' allegations are insufficient for many of the same reasons that the breach of contract claim failed. The only interaction between the parties that the Amended Complaint describes is the discussion between Mrs. Hersh and the CitiMortgage representative after the February 18, 2009, notice was sent. Plaintiff's claim the representative "refused to consider" their explanation and "fraudulently alleg[ed] they were in default." This falls short of establishing deception. Labelling CitiMortgage's conduct with pejorative adjectives is not enough to survive a motion to dismiss. Moreover, Plaintiffs' reliance on the Office of the Comptroller of Currency ("OCC") Consent Order and the Independent Foreclosure Review Notice ("IFRN") sent to Plaintiffs to establish wrongdoing on CitiMortgage's part is misplaced. The OCC Order expressly states that Citibank and its subsidiaries "neither admit[] nor den[y]" the OCC's findings. Am. Compl. Ex. E at 2 (ECF No. 9). The Order also provides that it cannot be read to "give to any person or entity, other than the parties hereto . . . any benefit or any legal or equitable right, remedy or claim . . . ." *Id.* at 27. Moreover, while the Consent Order "address[es] servicing and foreclosure practices generally, [it does] not address any specific transaction and, most importantly, [it does] not address Plaintiff[s] in particular." *Green v. Bank of America Corp.*, 530 Fed. Appx. 426, 430-31 (6th Cir. 2013). Accordingly, Plaintiffs have failed to show that the Order has "any relevance to the issue of whether [CitiMortgage] had authority to foreclose on [their] property." *Id.* Similarly, the IFRN was sent pursuant to the

OCC Consent Order to all borrowers whose homes were active in the foreclosure process at a certain time, so, as the Sixth Circuit Court of Appeals has explained, its receipt cannot be considered a "'red flag' – it was sent to all borrowers, not only those whose foreclosures the OCC considered suspect or improper." *Id.* at 431.

Even assuming that Plaintiffs have sufficiently alleged that CitiMortgage's representatives were acting in a deceptive manner by attempting to have Plaintiffs' satisfy the outstanding lien, the Amended Complaint contains nothing beyond boilerplate allegations to suggest that Plaintiffs detrimentally changed their position in reliance on such conduct and that their alleged damages resulted from such reliance. In fact, after receiving notice from CitiMortgage, Plaintiffs never paid the charges but instead continued trying to make their normal monthly payments. Am. Compl. ¶¶ 22-24. Thus, Plaintiffs' allegations actually belie their argument that they relied on CitiMortgage's representations in a way that caused them any harm. *See Williams v. EMC Mortg. Corp. Inc.*, No. 12–1215, 2013 WL 1874952, at *7 (E.D. Pa. May 3, 2013) (dismissing UTPCPL claim where plaintiff failed to show "how he detrimentally relied on [alleged] misrepresentations in a way that led to his harm. The plaintiff claims he kept trying to make his regular mortgage payments even after the alleged misrepresentations so it appears he did not rely on the alleged misrepresentations in a way that altered his behavior."). Because Plaintiffs' have failed to sufficiently plead all of the elements of a violation of the UTPCPL's catchall provision, Count II will be **DISMISSED**.[7]

---

7. CitiMortgage also argues that Plaintiffs UTPCPL claim is barred by the gist of the action and economic loss doctrines. The Court disagrees that the gist of the action doctrine bars Plaintiffs' claim, as the weight of authority suggests that the doctrine does not apply to UTPCPL claims since the statute imposes an independent duty on businesses to avoid fraudulent or deceptive conduct. *See, e.g.*, *Cave v. Saxon Mortg. Servs., Inc.*, No. 11–4586, 2012 WL 1957588, at *10 n.9 (E.D. Pa. May 30, 2012); *Clark v. EMC Mortg. Corp.*, Civ. A. No. 08–1409, 2009 WL 229761, at *6 (E.D. Pa. Jan. 29, 2009). It is less clear if the economic loss doctrine,

**D. Leave to Amend**

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* The district court may dismiss the action if the plaintiff does not file a timely amended complaint, or if the plaintiff files a notice of his intent to stand on the complaint as filed.

The Court will grant Plaintiffs leave to file a second Amended Complaint. Should they choose to do so, however, they must be mindful of the myriad problems Defendants and the Court have pointed out in their current pleading, including but not limited to: the time at which the claim accrued for purposes of the statute of limitations; whether the lien had in fact been avoided or eliminated in the Bankruptcy proceeding, such that CitiMortgage acted unreasonably in allegedly failing to cooperate with Plaintiffs upon receipt of the notice of default; the precise conduct Plaintiffs' allege was deceptive; and how they detrimentally relied on Defendants'

---

which prohibits a plaintiff from bring a tort-based claim when his damages are solely economic losses flowing from a breach of contract, applies to UTPCPL claims. Our Appellate Court has predicted that the Pennsylvania Supreme Court would hold that such claims are barred, especially in cases such as this one where the claim is virtually indistinguishable from a party's breach of contract claim. *See Werwinski v. Ford Motor Co.*, 286 F. 3d 661, 681 (3d Cir. 2002). However, *Werwinski* has drawn considerable criticism. *See, e.g.*, *O'Keepfe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 275 (E.D. Pa. 2003). Very recent authority from the Pennsylvania Superior Court casts the case's rationale into further doubt. *See Knight v. Springfield Hyundai*, --- A.3d ---, 2013 WL 6224622, at *9 (Pa. Super. Ct. Dec. 2, 2013) (limiting application of economic loss doctrine to claims sounding in negligence and, on that basis, holding that statutory claims brought under the UTPCPL are not barred). The parties have not thoroughly briefed this issue, however. The Court, therefore, expresses no opinion as to whether the doctrine provides an independent basis for dismissing Plaintiffs' claims, but notes that if Plaintiffs decide to file another Amended Complaint, they should be aware that the doctrine could be a further hurdle for them to surmount.

conduct. They must also be aware that any future UTPCPL claim, depending on how it is pled, may be subject to dismissal under the economic loss doctrine.

Plaintiffs may file a second Amended Complaint on or before January 14, 2014.

## IV. Conclusion

Based on the foregoing, Defendants' motion to dismiss will be **GRANTED** as to both counts. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RANDY A. HERSH** *also known as* RANDY HERSH AND **MELINDA A. HERSH** *his wife also known as* MELINDA HERSH,<br><br>Plaintiffs,<br><br>v.<br><br>**CITIMORTGAGE, INC., CITIGROUP, INC.** *and* **CITIBANK, N.A.,**<br><br>Defendants. | 2:13-cv-1344 |

## ORDER OF COURT

AND NOW, this 30th day of December, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the MOTION TO DISMISS COMPLAINT (ECF No. 12) filed by Defendants, CitiMortgage, Inc., Citigroup, Inc., and Citibank, N.A., is **GRANTED**. Plaintiffs may file an Amended Complaint on or before January 14, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    **David A. McGowan, Esquire**
       Email: dmcgowan@cbmclaw.com

       **Daniel McKenna, Esquire**
       Email: mckennad@ballardspahr.com
       **Martin C. Bryce , Jr., Esquire**
       Email: bryce@ballardspahr.com