IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RANDY A. HERSH** *also known as* RANDY HERSH, and **MELINDA A. HERSH** *also known as* MELINDA HERSH, *his wife*,<br><br>Plaintiffs,<br><br>v.<br><br>**CITIMORTGAGE, INC.,**<br>Defendant. | 2:13-cv-1344 |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 18) filed by CitiMortgage, Inc. ("CitiMortgage" or "Defendant"), with brief in support (ECF No. 19). Randy A. and Melissa A. Hersh ("Plaintiffs") filed a brief in opposition (ECF No. 20). Defendant submitted a reply brief (ECF No. 21), and Plaintiff, upon request from the Court, submitted a sur-reply brief (ECF No. 22). The motion is ripe for disposition.

I.  **Background**

This case arises out of a mortgage foreclosure proceeding initiated by CitiMortgage in 2009. On August 16, 2013, Plaintiffs filed suit in the Court of Common Pleas of Fayette County, raising claims for breach of contract and a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201 *et seq.*, against CitiMortgage, Citibank, N.A., and Citigroup, Inc. Defendants removed the action to this Court on September 13, 2013, on the basis of diversity jurisdiction (ECF No. 1). A week later, they filed a motion to dismiss the entire action (ECF No. 7). Plaintiffs responded by filing an Amended Complaint, which contained allegations largely mirroring those in the first Complaint (ECF No. 9). Another

1

motion to dismiss then followed, in which Defendants asserted a number of grounds for dismissal: they claimed that Citibank and Citigroup were improper defendants; *res judicata* barred Plaintiffs' claims; the statute of limitations had run on Plaintiffs' breach of contract claim; Pennsylvania law does not recognize a claim for breach of the implied covenant of good faith and fair dealing; and the UTPCPL claim failed insofar as Plaintiffs' did not allege any fraudulent or deceptive behavior on Defendants' part (ECF No. 12). On December 30, 2013, the Court granted Defendants' motion but granted Plaintiff leave to file a Second Amended Complaint. (ECF No. 16).

Plaintiffs filed their Second Amended Complaint on January 14, 2014, naming only CitiMortgage as a Defendant (ECF No. 17). The Second Amended Complaint, which repeats all of the allegations of the prior versions of the Complaint but raises a few new allegations, includes just one count: a breach of contract claim founded upon a breach of the implied covenant of good faith and fair dealing. Sec. Am. Compl. ¶ 37. Specifically, Plaintiffs allege that Defendant breached the contract "by adding charges they knew they had no right to add, to the monthly mortgage bills . . . specifically the Fayette County Tax claim Bureau lien and the judgment of $4,067.55." *Id.* ¶ 39. According to the Second Amended Complaint, "Defendant knew or should have known that it had no right to add these charges because Defendant possessed a copy of the Trustee's final report which clearly showed that the tax lien was paid in full and that the Plaintiffs advised them that the $ 4,067.55 judgment in favor the Teamsters Union had been discharged in 1998 in Chapter 7 proceeding at Case No. 98-29343." *Id.* ¶ 40. Plaintiffs also allege that CitiMortgage breached the contract "by fraudulently claiming that Plaintiffs had not paid the amount of $ 1,003.18 for each month from September 2008 through February of 2009, because Defendant knew or should have known Plaintiffs had paid Defendant

CitiMortgage, Inc. directly in the amount of $1,003.18 per month from September 2008 through February 2009." *Id.* ¶ 41. In addition, they aver that the contract was breached when Defendant "fail[ed] to accept and apply the Plaintiffs' correct payments to the mortgage made throughout 2008 and into 2009, which led to the eventual foreclosure on Plaintiffs' property[;]" "initiat[ed] a foreclosure action in the Court of Common Pleas of Fayette County on May 20, 2009[;]" and took "a default judgment against the Plaintiffs and [sold] the property through the Fayette County Sheriff's Office in March, 2010." *Id.* ¶¶ 43, 44, 45. Plaintiffs seek damages for the loss "of their home, real property, and residence" and "the loss, destruction, and diminution of their personal property as a result of the actions taken by contractors and/or agents at FHMLC when ejecting them from their property." *Id.* ¶ 47. They also request damages for "[p]ast, present and future embarrassment, emotional distress, anxiety, and mental anguish as a result of the above[.]" *Id.*

## II.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007), the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

A district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. First, the Court must separate the factual and legal elements

of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (citing *Iqbal,* 129 S. Ct. at 1949). The determination of "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal,* 129 S. Ct. at 1950).

## III. Discussion

In its brief, Defendant raises four arguments in support of its motion to dismiss. The Court has already rejected one of these arguments—namely, that the claim is barred by *res judicata*—in ruling on Defendant's prior motion to dismiss. Moreover, Plaintiffs have clarified in their response to the motion to dismiss that they are not alleging that CitiMortgage breached the bankruptcy discharge order by initiating the foreclosure action, so Defendant's argument on that point need not be considered here, either. That leaves two arguments. First, CitiMortgage contends that the mortgage permitted it to impose charges for liens against the property which could take priority over its security interest. Additionally, CitiMortgage argues that the Plaintiffs were "indisputably" in default when the foreclosure proceedings were initiated, as evidenced by the documents attached to the Second Amended Complaint. Before addressing these arguments, however, the Court must consider Defendant's contention that subject-matter jurisdiction is lacking under the *Rooker-Feldman* doctrine—an issue raised for the first time in Defendant's reply brief.

4

Defendant's newly placed reliance on *Rooker-Feldman* is puzzling. Not only does it suggest to the Court that Defendant improperly removed the action to this Court, but perhaps more notably it shows that CitiMortgage misunderstands what the proper remedy would be upon a finding that Plaintiffs' claims are barred by *Rooker-Feldman*. Should the Court arrive at that determination, the case would not be dismissed with prejudice—the result sought by CitiMortgage. *See* Def.'s Repl. Br. at 6 (ECF No. 21) (requesting that "Plaintiffs' Second Amended Complaint" be "dismissed with prejudice for this additional reason"). Rather, the case would be remanded to the Court of Common Pleas of Fayette County, the state court from which it was removed in September, as is required by 28 U.S.C. § 1447(c).[1] *See Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 46 (1st Cir. 2003) ("The existence of any subject matter jurisdiction defect divests the court of authority to dismiss a removed case on its merits, regardless of whether the jurisdictional flaw results from an improper removal or arises from some other source, such as the *Rooker-Feldman* doctrine."); *Selakowski v. Fed. Home Loan Mortg. Corp.*, No. 13-12335, 2014 WL 1207874, at *4 (E.D. Mich. Mar. 24, 2014) ("[I]f the Court were to conclude that the *Rooker-Feldman* doctrine applies, the appropriate relief would be a remand to state court, rather than the dismissal of Plaintiffs' complaint as sought in Wells Fargo's motion.").

Although that is clearly not the result that Defendant intended when it raised the issue, the Court must nevertheless satisfy itself that it has jurisdiction over this matter before proceeding on to the merits. *Birchall v. Countrywide Home Loans, Inc.*, No. 08-2447, 2009 WL 3822201, at *4 (E.D. Pa. Nov. 12, 2009) ("Since the doctrine is jurisdictional in nature, the question of its applicability is one that the Court is bound to ask and answer for itself, even when

---

[1] Title 28, United States Code, § 1447(c) provides, in pertinent part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall** be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

not otherwise suggested, and without respect to the relation of the parties to it."); *Castellano v. JP Morgan Chase Bank, N.A.*, No. 13-03390, 2014 WL 988563, at *3 (S.D.N.Y. Mar. 13, 2014) ("[E]ven though a plaintiff commenced the case in state court [and defendant raised the *Rooker-Feldman* argument after removal], because the *Rooker-Feldman* doctrine is jurisdictional in nature, the Court is forced to remand if the doctrine is otherwise applicable."). Otherwise, a remand is in order.

A. The *Rooker-Feldman* Doctrine Does Not Bar Plaintiffs' Claim.

*Rooker-Feldman* is a narrow, judicially created doctrine that prohibits a federal district court from exercising subject-matter jurisdiction over a case that is functionally equivalent to an appeal from a state-court judgment. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). The doctrine largely developed in the lower federal courts, without much in the way of instruction from the United States Supreme Court. *Id.* That all changed in *Exxon Mobil*. After observing that the doctrine had been "extend[ed] far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738," the Supreme Court seized the opportunity to return the doctrine to its moorings. *Id.* at 283. To that end, the *Exxon Mobil* Court held that the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. By contrast, the *Exxon Mobil* Court clarified, the doctrine cannot be used to "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal

6

court a matter previously litigated in state court." *Id.* at 293. Thus, "[i]f a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, there is jurisdiction, and state law determines whether the defendant prevails under preclusion principles." *Id.* (citation and quotation marks omitted).

Without so much as even a citation to *Exxon Mobil*, the Supreme Court's thorough discussion of the doctrine to date, Defendant argues that *Rooker-Feldman* bars Plaintiffs' claims because "a finding for Plaintiffs here is tantamount to ruling that the state court was wrong in granting [CitiMortgage] judgment in foreclosure and ejectment. Plaintiffs' claims, therefore, are 'inextricable [sic] intertwined' with the foreclosure and ejectment actions." Def.'s Repl. Br. at 6 (ECF No. 21). The Court of Appeals, however, has warned that it "may no longer be appropriate" to rely upon "the 'inextricably intertwined' prong" of its "pre-*Exxon* formulation of the *Rooker-Feldman* doctrine," as Defendant has done. *See Goodson v. Maggi*, 797 F. Supp. 2d 624, 633 (W.D. Pa. 2011) (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 200 n.5 (3d Cir. 2008); *East Hill Synagogue v. City of Englewood*, 240 F. App'x 939, 940 n.1 (3d Cir. 2007)). In fact, while the Court of Appeals continued to employ the "inextricably intertwined" analysis in the immediate wake of *Exxon Mobil*, *see, e.g.*, *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) (a case cited by Defendant), it has more recently acknowledged that the *Exxon Mobil* Court implicitly rejected the manner in which the Court of Appeals had previously used that phrase, *see Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (citations and quotation marks omitted). In so doing, the Court of Appeals joined a growing number of federal appeals courts in concluding that "[t]he phrase 'inextricably intertwined' does not create an additional legal test or expand the scope of *Rooker–Feldman* beyond challenges to state-court judgments." *Id.* Rather, "'[i]t is simply a descriptive label attached to claims that meet

7

the requirements outlined in *Exxon Mobil*.'" *Id.* (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)).

In place of its "inextricably intertwined" analysis, the Court of Appeals adopted a four-part test based on the holding of *Exxon Mobil*—another standard Defendant does not cite, let alone even attempt to apply. Under this test,

> there are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Id.* at 166 (quoting *Exxon Mobil*, 544 U.S. at 284).

According to the Court of Appeals, the two keys for determining whether a claim is barred by *Rooker-Feldman* are the second and fourth requirements. *Id.* "The second requirement—that a plaintiff must be complaining of injuries caused by a state-court judgment—may also be thought of as an inquiry into the source of the plaintiff's injury." *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006)). "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.* The fourth requirement, the Court of Appeals explained, is "closely related" though not identical to the second. *Id.* at 168. Specifically, this requirement targets cases in which a plaintiff seeks the district court to engage in "appellate review of state-court decisions"—*i.e.*, "'a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.'" *Id.* (quoting *Bolden v. City of Topeka, Ks.*, 441 F.3d 1129, 1143 (10th Cir. 2006)). As the Court of Appeals explained, "When 'the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the

8

*bona fides* of the prior judgment,' the second, or federal, court 'is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.'" *Id.* (quoting *Bolden*, 441 F.3d at 1143).

Applying these principles in this case, the Court concludes that the *Rooker-Feldman* doctrine does not bar Plaintiffs' claim. Although Plaintiffs lost in the state-court foreclosure action and thus the first requirement of the *Great Western* test is met, the critical second and fourth prongs are not satisfied. As to the second prong, Plaintiffs' claim is premised on conduct allegedly committed by Defendant that pre-dates the foreclosure action: the imposition of charges for the allegedly outstanding tax lien and judgment, the failure to accept and apply Plaintiffs' payments from 2008 to 2009, and the initiation of the foreclosure action when Plaintiffs were purportedly not in default. Plaintiffs' alleged injuries, therefore, were not in the main caused by the state-court judgment. *See Straker v. Deutsche Bank Nat'l Trust*, No. 09-338, 2011 WL 398374, at *3 (M.D. Pa. Feb. 3, 2011) (holding that claim for "injuries that existed before state-court foreclosure action" were not barred). Turning to the fourth prong, even if some aspects of Plaintiff's alleged injuries could be construed as having been caused by the state-court judgment (*e.g.*, that portion of their claim alleging damage to her personal property caused by contractors when ejecting them from their home), Plaintiffs are not asking this Court to "review and reject" the state court's ruling. Granted, if it were to be determined that Plaintiffs were not in default when the foreclosure proceedings were initiated, the Fayette County Court of Common Pleas decision to permit the foreclosure action to proceed would rest on shaky grounds. But under *Great Western*, that is no longer dispositive, so long as granting the relief requested would not undo that court's judgment. In this case, granting Plaintiffs' request for damages would not

lead to that result.[2] *See, e.g.*, *Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 948 (3d Cir. 2010) (Doctrine barred a plaintiff's claim insofar as it alleged "damage to [plaintiff's] credit rating caused by the foreclosure," but not insofar as it alleged claims for "fraud, deception and other wrongs which pre-dated the foreclosure action."); *Gray v. Martinez*, 465 F. App'x 86, 89 n.4 (3d Cir. 2012) (Claims that certain financial defendants committed "fraud, collusion, or other malfeasance in securing foreclosure" were not barred "simply because relief would cast doubt on the state-court judgment."); *Conklin v. Anthou*, 495 F. App'x 257, 262 (3d Cir. 2012) (A plaintiff who loses in a foreclosure action "is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question."). Accordingly, the Court is satisfied that it has jurisdiction over this action and will proceed to consider Defendant's other arguments in support of dismissal.

---

[2] The Court recognizes that a few cases decided after *Great Western*, including three unpublished cases from the Court of Appeals, have reached the opposite result when faced with similar claims. *See, e.g.*, *Laychock v. Wells Fargo Home Mortg.*, 399 F. App'x 716, 718-19 (3d Cir. 2010) (holding that action was barred since it "[a]ll four of the requirements we outlined in Great Western are satisfied here and relief from a 'wrongful foreclosure' . . . would have required the District Court to determine that the state court erroneously entered judgment"); *Manu v. Nat'l City Bank of Indiana*, 471 F. App'x 101, 103 (3d Cir. 2012) (concluding that "allegations that various statutes and rights were violated because the defendants threatened, and followed through with, foreclosure when they had no right to do so is nothing more than an attack on the state court judgment"); *Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 51 (3d Cir. 2013) (holding that claim "bank had no right to foreclose on the property and therefore committed 'criminal acts' by enforcing the foreclosure judgment" as "an attack on the state court judgment of foreclosure"); *Francis v. TD Bank, N.A.*, No. 12-7753, 2013 WL 4675398, at *4 (E.D. Pa. Aug. 30, 2013) (holding that "Plaintiff's claims for 'misimplied payments' and 'breach of contract' must be dismissed because granting these claims would require finding that there was an error made by the state court"). These cases are unpersuasive, however, as they either rely on the old "inextricably intertwined" framework or espouse a rationale that cannot be squared with that of *Great Western*. In particular, it does not matter that a judgment in favor of a plaintiff in a subsequent action might require a finding that the state court's judgment was "erroneously entered," a factor the court found dispositive in *Laychock*, 399 F. App'x at 719. The court in *Great Western* was very clear on that point. *See Great Western*, 615 F.3d at 173 ("A finding by the District Court that state-court decisions were erroneous and thus injured Great Western would not result in overruling the judgments of the Pennsylvania courts . . . . Here, while Great Western's claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for Great Western to prevail.").

### B. Plaintiffs State a Claim for Breach of Contract.

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citation and quotation marks omitted). CitiMortgage's arguments are directed at the second element. As noted *supra*, CitiMortgage contends that Plaintiffs have failed to allege a breach of contract since the mortgage permitted CitiMortgage to impose charges for liens against the property that could take priority over its own interest. Defendant also contends that the documents attached to Plaintiffs' Second Amended Complaint—the Trustee's report from the bankruptcy proceedings, the motion to lift the automatic stay filed by CitiMortgage in the bankruptcy proceedings, and the Act 91 notice sent to Plaintiff by CitiMortgage—"indisputably" establish that Plaintiffs were in default when CitiMortgage initiated the foreclosure action. The Court cannot fully agree with these contentions and finds instead that Plaintiffs have sufficiently stated a claim for breach of contract.

CitiMortgage's first argument is correct, under the plain terms of the mortgage, but misses a larger point. If CitiMortgage determined that a lien existed on the property that could take priority over its own interest, it could have given Plaintiffs notice in writing[3] and demanded that Plaintiffs satisfy the lien. *See* Mortg. ¶ 4, (Pl.'s Ex. A at 6, ECF No. 17-1). Alternatively,

---

[3] Paragraph 15 of the mortgage requires that "[a]ll notices given by Borrower or Lender in connection with the Security Instrument must be writing." Mortg. ¶ 15 (Pl.'s Ex. A at 12, ECF No. 17-1). It is not clear from the Second Amended Complaint whether CitiMortgage ever gave Plaintiffs written notice that it was requesting that the purportedly outstanding judgment and lien be satisfied or imposing charges on Plaintiffs relative to the lien and judgment. As discussed *infra*, none of the documents attached to the Second Amended Complaint refer to the existence of either the judgment or the lien. The only time the judgment or lien was allegedly referenced was during the phone call between a CitiMortgage representative and Melinda Hersh in February 2009, during which Ms. Hersh was inquiring into the nature of the default alleged in the February 18, 2009, statement from CitiMortgage. Sec. Am. Compl. at ¶¶ 20-21. Notably, the February 18 statement indicated that Plaintiffs were in default because they had failed to make six months' worth of payments. It does not indicate that there were any other charges outstanding related to the judgment or tax lien.

CitiMortgage could have paid off the amount secured by the lien to protect itself and then, upon written notice, requested payment from Plaintiffs. *See id.* ¶ 9 (Pl.'s Ex. A at 8-9, ECF No. 17-1). If Plaintiffs failed to comply, CitiMortgage, upon written notice of the nature of the default, could have accelerated Plaintiffs' payments and then foreclosed upon the mortgage. *See id.* ¶ 22 (Pl.'s Ex. A at 14, ECF No. 17-1). It also could have refused to accept Plaintiffs' payments if they were "insufficient to bring the Loan current." *Id.* ¶ 1 (Pl.'s Ex. A at 5, ECF No. 17-1). Thus, insofar as Plaintiffs' claim is premised solely on the imposition of charges for the purportedly outstanding judgment or tax lien, the claim would fail—assuming, of course, that Plaintiffs received the requisite written notice *and* that the judgment and tax lien were still attached to the property.

Plaintiffs seek to avoid that result by alleging that the Teamsters' judgment had been "discharged" in the 1998 Chapter 7 bankruptcy proceedings and the Fayette County tax lien had been paid in full under the Chapter 13 plan, so there was no basis for CitiMortgage to impose the alleged charges. As the Court alluded to in its prior Opinion, however, even if the judgment lien had been "discharged" in the Chapter 7 proceeding, the discharge had the effect of "extinguish[ing] only the personal liability of the [Plaintiffs]." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). Conversely, the judgment lien holder's right to enforce the lien against Plaintiffs' property survived notwithstanding the bankruptcy court's discharge order. *Id.*; *see also In re Burkett*, 295 B.R. 776, 784 (Bankr. W.D. Pa. 2003) ("Section 524(a)(2) of the Bankruptcy Code does not prohibit the holder of an unavoided lien from enforcing it in a subsequent *in rem* action."). Thus, assuming that this judgment lien had not expired,[4]

---

[4] Under Pennsylvania law, "a judgment continues as a lien against real property for five years and then expires unless revived." *Mid-State Bank & Trust Co. v. Globalnet Int'l, Inc.*, 710 A.2d 1187, 1190 (Pa. Super. Ct. 1998) (citations omitted). Plaintiffs have not alleged the date on which the Teamsters' judgment was entered—it had to be sometime before the 1998 bankruptcy proceedings—or whether it was ever revived.

CitiMortgage was within its rights to demand in writing that the judgment be satisfied or to pay the judgment and charge Plaintiffs accordingly. On the other hand, based on Plaintiffs' amended pleading and the documents from the bankruptcy proceeding that are attached thereto, it does appear that the Fayette County Tax lien was paid in full in the Chapter 13 proceeding, as Plaintiffs argue. If that were that case, CitiMortgage could not have put Plaintiffs into default on the basis of this lien. Thus, to the extent that Plaintiffs' claim is premised on the imposition of charges related to the tax lien, the claim must be permitted to go forward.

The Second Amended Complaint also includes additional allegations that persuade the Court that this matter should not be dismissed at the motion to dismiss stage. Specifically, in addition to alleging that Defendant breached the contract "by adding charges they knew that had no right to add," Sec. Am. Compl. ¶ 39, Plaintiffs also now allege that Defendants breached the contract by "fraudulently claiming that Plaintiffs had not paid the amount of $1,003.18 for each month from September 2008 through February of 2009, because Defendant knew or should have known Plaintiffs had paid Defendant CitiMortgage, Inc., directly . . . ." *Id.* ¶ 41. Indeed, according to the Second Amended Complaint and several documents attached thereto, including the Act 91 notice and the foreclosure complaint, CitiMortgage's asserted basis for instituting the foreclosure action was Plaintiffs' failure to make monthly payments starting in September 2008.[5] In these documents, the existence of an outstanding judgment or tax lien was never mentioned as having triggered the default and CitiMortgage's concomitant right to refuse to accept Plaintiffs' payments. Nor is there any mention of additional charges imposed on the basis of either the judgment or the lien. Furthermore, there is no indication that Plaintiffs' payments were refused

---

[5] The motion for relief from the automatic stay indicates that Plaintiffs missed their monthly payments starting in July 2008, while the Act 91 notice and foreclosure complaint indicate that the missed payments began in September 2008.

13

during the alleged period of default because Plaintiffs refused to pay any additional charges.

Accordingly, if, as Plaintiffs allege, "all arrears owed to Defendant CitiMortgage and it is [sic] predecessor ABN AMRO had been paid" under the terms of the Chapter 13 plan and thereafter Plaintiffs made all of their monthly payments directly, and "Defendant still initiated foreclosure . . . then this would be sufficient to allege a breach of contract by Defendant." *Barber v. CitiMortgage*, EDCV 13-01188, 2014 WL 321934, at *5 (C.D. Cal. Jan. 2, 2014). Moreover, the Court agrees with Plaintiff that these documents fail to definitively establish that Plaintiffs were behind on their payments, as the crux of Plaintiffs' claim is that no matter what the documents may have said, they were not actually in default.

In sum, although it may later be discovered that Plaintiffs were in default on the loan— either because CitiMortgage gave them proper notice of the judgment and Plaintiffs failed to pay or because Plaintiffs simply failed to make their post-petition monthly payments—a fair reading of the Second Amended Complaint at this stage of the proceedings leads to the conclusion that the factual allegations provided by Plaintiffs extend beyond conclusory assertions to at least having stated a facially plausible claim. Thus, the Second Amended Complaint will not be dismissed and the parties will be directed to proceed with discovery.

The Court notes, however, that Plaintiffs request damages for "embarrassment, emotional distress, anxiety, and mental anguish." Sec. Am. Compl. ¶ 47. Although CitiMortgage has not raised this issue, it is well settled that "emotional distress damages are generally not recoverable in actions for breach of contract in Pennsylvania[.]" *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d. 515, 522 (W.D. Pa. 2012) (citations omitted). None of the narrow exceptions to that general rule are implicated by Plaintiffs' allegations. *See id.* (explaining that "emotional distress damages may be possible where the breach is of such a kind that serious emotional disturbance was a

particular likely result") (citation and quotation marks omitted). Accordingly, the Court will *sua sponte* strike Plaintiffs' claim for emotional distress damages from the Second Amended Complaint under Fed. R. Civ. P. 12(f)(1).

## IV. Conclusion

Based on the foregoing, Defendants' motion to dismiss will be **DENIED**, and Plaintiffs' claim for emotional distress damages will be **STRICKEN** from the Second Amended Complaint. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**RANDY A. HERSH** *also known as*
RANDY HERSH, and **MELINDA A. HERSH**
*also known as* MELINDA HERSH, *his wife*,

        **Plaintiffs,**

        v.

**CITIMORTGAGE, INC.,**
        **Defendant.**

2:13-cv-1344

## ORDER OF COURT

**AND NOW**, this 21st day of April, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 18) filed by CitiMortgage, Inc. is **DENIED**. It is **FURTHER ORDERED** that Plaintiffs' claim for emotional distress damages is **STRICKEN** from the Second Amended Complaint.

Defendant shall file an Answer to Plaintiffs' Second Amended Complaint on or before May 5, 2014. The parties shall confer as necessary and shall file with the Court the Stipulation Selecting ADR Process and the Rule 26(f) Report on or before June 2, 2014. The initial case management conference is hereby scheduled for June 20, 2014 at 1:30 p.m. in Courtroom 6C.

        BY THE COURT:

        s/Terrence F. McVerry
        United States District Judge

cc:    **David A. McGowan, Esquire**
       Email: dmcgowan@cbmclaw.com

       **Daniel McKenna, Esquire**
       Email: mckennad@ballardspahr.com
       **Martin C. Bryce, Jr., Esquire**
       Email: bryce@ballardspahr.com